UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR BREACH OF CONFIDENCE INVESTIGATION | ) ) ) ) ) ) ) | ML No: 1:22-ml-966 |

*Reference:*     *DOJ Ref. # CRM-182-80716*

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Erica Y. Laster, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Paraguay. In support of this application, the United States asserts:

RELEVANT FACTS

1.     The Central Authority of Paraguay, the Public Ministry, submitted a request for assistance (the Request) to the United States, pursuant to the Inter-American Convention on Mutual Assistance in Criminal Matters, Aug. 27, 1992 - Feb. 28, 2006, S. Treaty Doc. No. 105-25 (the Treaty).

2. As stated in the Request, Public Ministry of the Republic of Paraguay, is prosecuting Elizabeth Kolling Fuber (Fuber) for breach of confidence, which occurred between on or about September 29, 2017 and April 3, 2019, in violation of the criminal law of Paraguay, specifically, Article 192 of the Paraguayan Criminal Code. Under the Treaty, the United States is obligated to assist in response to the Request.

3. According to Paraguayan authorities, Fuber acquired products without authorization from her company and sold them in order to provide a benefit to herself through other companies, in which she held an interest. On September 29, 2017, Fuber became the President of a company that sells computer products (the Victim). In January of 2018, an individual granted the Victim two separate loans in the amount of 60,500 USD each. Due to the fact that the Victim did not maintain a bank account, the individual transferred the money from his Citibank account to Fuber's Banco Itau account, held in the name of a different company (Company 1), a company where Fuber held the position of Principal Director. As a result of the loans, the Victim was able to begin commercial operations and realize profits.

4. In 2018, Fuber purchased, using Victim company funds, 135,000 USD worth of computer products from Schneider Electric, a company located in the United States, without authorization from the Victim. Fuber then sold the products to Company 1 in installments without authorization from the Victim's Board of Directors. On March 20, 2018, Fuber entered a contract to sell the computer products from Company 1 to another company in which she held the position of Principal Director (Company 2), before selling the same computer products to the Bank 1, a Paraguayan bank, for 26,759,999,988 PYG (approximately 3,891,752.229 USD). When Fuber purchased the computer products from Schneider Electric, Schneider Electric allowed the Victim a set amount of time to pay for the products under the contract. However,

when Fuber sold the same products to Company 1, she allowed Company 1 a longer time to pay the purchase price. This caused a financial detriment and/or loss to the Victim, making it unable to comply with the obligations it contracted in its initial purchase of the computer products from Schneider Electric. Further, Fuber's actions resulted in a benefit for Company 1 and Company 2.

5. According to the Victim's board meeting minutes, on September 29, 2017, Fuber assumed the obligation and duty to protect the business interests for the Victim in her capacity as President. However, authorities believe that Fuber knowingly assumed such an obligation and used her position to fraudulently enter contracts for the sale of computer products to obtain a benefit for herself and companies in which she maintained an interest. Fuber held her position as the Victim's President through April 3, 2019.

6. To further the investigation, Paraguayan authorities have asked U.S. authorities to provide business records from Schneider Electric regarding the sale of computer products to the Victim.

## LEGAL BACKGROUND

7. A treaty[1] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968). A multilateral convention is a

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

treaty under U.S. law.

8. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \*               \*               \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \*               \*               \*
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

9. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2] This section provides clear authority for the federal courts, upon application duly

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. §

authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

10.   An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[4] Upon such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things. See 18 U.S.C. § 3512(a)(1)--(b)(1). In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence. 18 U.S.C. § 3512(a)(1).

11.   Section 3512 also authorizes any person appointed to direct the taking of

---

3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] "Section 3512 can be invoked only when authorized by OIA. . . . Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA." Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[5] The term "federal judge" includes a magistrate judge. See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

testimony or statements and/or the production of documents.  The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things.  18 U.S.C. § 3512(b)(2).  In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena."  Any such subpoena may be served or executed anywhere in the United States.  18 U.S.C. § 3512(f).

## REQUEST FOR ORDER

12.     The Office of International Affairs has reviewed and authorized the Request, and is executing the Request itself.  Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512.  In addition, the Request was submitted by an appropriate "foreign authority," the Public Ministry, the designated Central Authority in Paraguay and seeks assistance in the investigation of breach of confidence, a criminal offense in Paraguay.  The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of business records, falls squarely within that contemplated by Section 3512 and the Treaty.  Finally, this application was properly filed in the District of Columbia.

13.     This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

14.     When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions.  Because subpoenas utilized in U.S.

criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients.  Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

15. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Erica Y. Laster, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent,

supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence.

        Respectfully submitted,

        VAUGHN A. ARY
        DIRECTOR
        OFFICE OF INTERNATIONAL AFFAIRS
        OK Bar Number 12199

By: _____
        Erica Y. Laster
        Trial Attorney
        D.C. Bar Number 1032449
        Office of International Affairs
        Criminal Division, Department of Justice
        1301 New York Avenue, N.W.
        Washington, D.C. 20530
        (202) 353-1677
        Erica.Laster@usdoj.